**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

T.Moore Services, LLC                              Civil Action No. 10-1221(Lead)
                                                   10-1336, 10-1356, 10-1374 (Members)

versus                                             Judge Tucker L. Melançon

Rentrop Tugs, Inc., et al                          Magistrate Judge Patrick J. Hanna

**MEMORANDUM RULING AND ORDER**

Before the Court is The United States' Motion To Lift Or Modify The Stay, To File The Attached Complaint Against The Limitation Petitioners And To Consolidate This Action With The Lead And Member Cases [Rec. Doc. 54], a Memorandum in Opposition filed by T&R Tugs, LLC ["T&R"], Dupre Marine Transportation, Inc. ["Dupre Marine"], Rentrop Tugs, Inc. ["Rentrop"], Transinland Marine, Inc. ["Transinland"], and Mallard Towing, LLC. ["Mallard'] [collectively known as "Towing Defendants"] [Rec. Doc. 60] and the United States' Reply [Rec. Doc. 65].  For the reasons that follow, the motion will be granted.

*Background*

T. Moore operates a salvage yard on the Charenton Canal, which is a navigable waterway.[1]  *R. 1*.  T. Moore purchased several scrap rigs that were resting on the bottom of Lake De Cade.  *Id*.  To transport the rigs to its facility, Tina Moore, the owner and president of T. Moore, entered into a contract with Rentrop.  *Id.*  Rentrop's role was to pump the water out of the rigs, floating them, and then to tow each one to the T. Moore yard.  *Id.*  Rentrop successfully towed Rigs 23, 32 and 27.  On April 29, 2010, the M/V Zip II, owed by Transinland and operated by Rentrop, began to tow Rig HERCULES 61.  *Id.*

---

1. Thus, the Court has admiralty jurisdiction over this matter.

at ¶ 5. Another tug, the M/V TALTON, owned by Mallard, acted as the push boat. *R. 1.* During the voyage from Lake De Cade, the M/V ZIP II developed engine problems and was replaced by the M/V CAPT VINCE, a tug owned by T&R and operated by Dupre Marine. *Id.* When the tugs were swapped, the M/V CAPT VINCE and M/V TALTON continued the towing operation. *Id.* They arrived at the yard during the early morning hours of April 30, 2010 and the M/V CAPT VINCE and the M/V TALTON remained on station to hold the Rig HERCULES 61 in place until the break of day, when a crew could secure it. *Id.* at ¶ 6. During the morning hours, the Rig HERCULES 61 took on water, rolled into the canal and sank. The sunken rig has not been retrieved.[2]

  T. Moore filed a complaint against defendants Rentrop, Mallard, Dupre Marine and their insurers on August 2, 2010. *R. 1.* Thereafter, the Towing Defendants filed individual petitions seeking exoneration from and limitation of liability under Rule 9(h) of the Federal Rules of Civil Procedure and Rule F. of the Supplemental Rules of Admiralty and Maritime Claims, which implement the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30505-512: (1) 10-cv-1356 filed by Dupre Marine and T&R; (2) 10-cv-1356 Mallard; (3) Rentrop and Transinland, 10-cv-1374. The Court consolidated the cases. *R. 8;9.* On November 30, the United States filed a claim in the limitation proceedings. *R. 38.*

*Analysis*

  The United States contends that the sinking of Rig HERCULES 61 in the Charenton Canal violates both 33 U.S.C. § 403, section 10 and 33 U.S.C. § 409, section 15 of the Rivers and Harbors Act, and, as a result, both the owner and the operators of Rig

---

2. The United States represents that "[d]ue to the presence of the wreck, the Coast Guard has restricted vessel traffic in the Charenton Canal, which remains closed to all marine traffic within 1,000 yards of the wreck. Vessels and tows may not enter this zone unless authorized by the Captain of Port Morgan City. *See* 75 Fed. Reg. 228 at 72952." *R. 54.*

HERCULES 61 are responsible to mark and remove it. *R. 54*. The United States moves the Court: (1) for an order lifting the stay to allow the government to proceed separately[3]; (2) for leave to file a separate complaint to institute a civil action outside the limitation proceedings; and (3) for consolidation of the separate action with the previously consolidated cases. In their opposition, the Towing Defendants contend that, while they agree Rig HERCULES 61 should be immediately removed and should have been removed by T. Moore Services, the United States' motion to file a complaint outside the limitation proceeding does nothing to further that goal; rather, the government's "attempt to reshape the pending consolidated litigation" will only further delay getting the rig removed. *R. 60*. In reply, the United States argues that granting its motion gives the government two advantages: (1) the right to seek an injunction against the Towing Defendants, rather than T. Moore Services alone; and, (2) the right to recover expenses should the United States choose to remove the rig and seek reimbursement. Both are actions which the Fifth Circuit jurisprudence supports.

      The United States is authorized to bring this civil action by the River and Harbors Act of 1899, 33 U.S.C. §§ 401-476. *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) ("The Rivers and Harbors Act of 1899 "was obviously intended to prevent obstructions in the Nation's waterways."). The coverage of the Act is broad and the principal beneficiary is the Government. *Id.* The Fifth Circuit has consistently held that, where the rights of the United States are concerned, the Limitation Act will accede to the Rives and Harbors Act. *In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 593 (5th

---

3. "When a shipowner invokes the Act the federal court may stay all other proceedings against the shipowner arising out of the same accident and require all claimants to timely assert their claims in the limitation court." *Texaco, Inc. v. Williams*, 47 F.3d 765, 767 (5th Cir.1995).

3.

Cir.,2008) ("[W]e conclude that, as a result of the 1986 amendments to the Wreck Act, the United States may bring a statutory action under the Wreck Act to hold [the dry dock owner] personally liable for the cost of removing its sunken dry dock, and that the claim is not subject to the Limitation Act."); *University of Texas Medical Branch at Galveston v. U.S.*, 557 F.2d 438, 442 (5th Cir.,1977) ("[W]e decide today that the purposes of the 1899 Act prevail, the Limitation Act is inapplicable, and the potential liability of a negligent party for wreck removal costs under the 1899 Act is not limitable.").

"Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403, prohibits '(t)he creation of any obstructions not affirmatively authorized by Congress.'" *University of Texas Medical Branch*, 557 F.2d at 444. 33 U.S.C. § 403 (Section 10) provides in pertinent part:

> The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army.

33 U.S.C. § 403.

"Section 15 of the Rivers and Harbors Act, 33 U.S.C. § 409, part of the 'Wreck Act' proper, specifically addresses the problem of obstructions caused by sunken vessels. Part of the difficulty in construing section 15 arises from its division into three operative clauses. The first clause prohibits the intentional or negligent sinking of a vessel in navigable waters. The second clause applies to all sinkings, whether negligent or accidental. It provides that the owner of the wreck must mark it with a buoy or beacon. The third clause, which also applies to all sinkings, whether innocent or negligent, prescribes that the owner of the wreck shall remove it on pain of being considered to have abandoned

the vessel, subjecting it to removal and sale by the government." *Id.*  "The provisions of the Wreck Act [ ] apply only to owners, lessees, and operators of sunken crafts." *Fuesting v. Lafayette Parish Bayou Vermilion Dist.*, 470 F.3d 576, 580 (5th Cir., 2006). "[A] towing vessel can violate the Wreck Act and, therefore, have responsibility for the removal of a sunken tow owned by a non-negligent party.  *See, Agri-Trans Corp. v. Gladders Barge Line*, *Inc.*, 721 F.2d 1005, 1008 (5th Cir.1983) (noting that 'the cost of recovering a sunken vessel can be imposed on a negligent non-owner').  *See also*, St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 941 (5th Cir.1982) ('[T]he negligent owner of the towing vessel ... would be personally liable to the government for the cost of removal of the sunken vessel as a hazard to navigation unless [the owner] promptly removed the barge.')". *Id.*

When an owner and operators fail to remove the wreck, as in this case, the United States may, at its discretion, ask the Court to issue an injunction ordering them to do so, or, in the alternative, the United States may undertake removal and later seek reimbursement. *In re Barnacle Marine Management Inc.*, 233 F.3d 865, 869 (5th Cir., 2000).  Here, the United States moves the Court to lift its stay in the limitation proceedings, allowing the government to proceed separately by filing a complaint; to file the attached complaint, which would institute the separate action; and, to consolidate the separate action with civil action 10-cv-1221 (lead case) and 10-cv-1336, 10-cv-1356, and 10-cv-1374 (member cases).  Accordingly, it is,

**ORDERED** that the United States' Motion To Lift Or Modify The Stay, To File The Attached Complaint Against The Limitation Petitioners And To Consolidate This Action With The Lead And Member Cases  [Rec. Doc. 54] is **GRANTED** and the Clerk

of this Court is to lift the stay in this consolidated limitation action in order for the United States to file its complaint within 15 days of the entry of this Order.

**IT IS FURTHER ORDERED** that upon filing its complaint, the United States may file a motion to withdraw its claim in the limitation proceedings in this action [Rec. Doc. 38] and to consolidate its complaint with the previously consolidated actions herein.

Thus done and signed this 19th day of January, 2011, at Lafayette, Louisiana.

_____
Tucker L. Melançon
UNITED STATES DISTRICT JUDGE