UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

T MOORE SERVICES, LLC          CIVIL ACTION NO. 6:10-cv-1221 (Lead)
                                                              6:10-cv-1336 (Member)
                                                              6:10-cv-1356 (Member)
                                                              6:10-cv-1374 (Member)


VERSUS                                       JUDGE MELANÇON

RENTROP TUGS INC., ET AL.          MAGISTRATE JUDGE HANNA


**REPORT  AND  RECOMMENDATION**

(Rec. Doc. 58)


Before this Court is the motion to dismiss the claim of Texon Distributing, LP

(Rec. Doc. 58), which was filed by T&R Tugs, LLC; Dupre Marine Transportation,

Inc.; Rentrop Tugs, Inc.; Transinland Marine, Inc.; and Mallard Towing, LLC.

(hereinafter referred to as "the Towing Companies.")  Texon opposes the motion.

(Rec. Doc. 61).  Oral argument was held on February 23, 2011.  Present in court were

T. Justin Simpson, counsel for Mallard Towing, LLC; and Susannah Skinner

Pedalino, counsel for Transinland Marine, Inc., Rentrop Tugs, Inc., and their insurers.

Also present in court was Justin D. Mitchell, counsel for Texon.

## FACTUAL BACKGROUND

On April 30, 2010, Rig 61 (sometimes referred to in the pleadings as Hercules 61 or Falcon 61), which was being salvaged by T. Moore Services, L.L.C., sank in the Charenton Drainage and Navigation Canal near T. Moore's salvage yard. (Rec. Doc. 1 at ¶1).  At least five lawsuits have arisen out of this incident.

According to the complaint filed in this action, T. Moore operates a salvage yard located near Franklin on the Charenton Canal.  (Rec. Doc. 1 at ¶12).  T. Moore purchased several scrap rigs that were sitting on the bottom of Lake Decade and planned to move them to T. Moore's yard to be disassembled and sold for scrap. (Rec. Doc. 1 at ¶13).  T. Moore hired Rentrop Tugs to pump out the rigs and tow them to T. Moore's yard.  (Rec. Doc. 1 at ¶14).  Rentrop Tugs was advised that there was a hole in Rig 61 and that it needed to be placed against the bank of the canal to prevent it from sinking.  (Rec. Doc. 1 at ¶19).

As Rig 61 was being towed in, the pulling tug provided by Rentrop Tugs developed engine problems.  (Rec. Doc. 1 at ¶20).  A replacement tug was provided by Dupre Marine.  (Rec. Doc. 1 at ¶20).  Mallard Towing provided the push boat. (Rec. Doc. 1 at ¶20).

As it was being towed in, Rig 61 began to take on water.  (Rec. Doc. 1 at ¶21). T. Moore instructed the Mallard push boat to place the rig so that the hole was up

Ha

against the bank of the Charenton Canal.  (Rec. Doc. 1 at ¶23).  Instead, the rig was allegedly pushed up against another rig with the hole facing out toward the canal. (Rec. Doc. 1 at ¶24).  The towing companies allegedly turned off the pumps, did not restart the pumps when Rig 61 began taking on more water, and the rig sank.  (Rec. Doc. 1 at ¶¶25-28).

When it sank, Rig 61 allegedly spilled diesel, requiring T. Moore to deploy a containment boom at a cost in excess of $134,000.  (Rec. Doc. 1 at ¶29).  T. Moore also allegedly had to hire divers and engineers to help make the canal navigable at a cost of approximately $225,000.  (Rec. Doc. 1 at ¶30).  The rig still partially blocks the canal.  (Rec. Doc. 1 at ¶31).

T. Moore asserted multiple claims, and claims for exoneration and limitation of liability were filed by several parties, including Texon.  The Towing Companies now seek to have Texon's claim dismissed.

## ANALYSIS

Texon claims that it owns and operates a distribution facility in Charenton, Louisiana.  (Rec. Doc. 32).  Texon asserts a claim for $681,461.28 in damages but avers that only part of its damages have been determined.  (Rec. Doc. 32 at ¶10.) Texon further claims that the partial blockage of the canal by the rig resulted in

business interruption, contractual damages, and costly modifications to transportation

arrangements for the ingress and egress of products from Texon's facility. (Rec. Doc.

32 at ¶6).   It describes its damages as including diminished profits, business

interruption losses, extra expense loss, and contractual damages as well as other

unspecified types of damages. (Rec. Doc. 32 at ¶9).  Texon does not allege, however,

that it has sustained any physical damage to a proprietary interest due to the sinking

of Rig 61.

The Towing Companies filed a Rule 12(b)(6) motion to dismiss Texon's claim,

arguing that Texon has failed to state a claim on which relief may be granted because

Texon's alleged damages are solely economic in nature, did not result from damage

to property in which Texon had a proprietary interest and are, therefore, barred by the

rationale of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).

A.    THE STANDARD FOR ANALYZING A RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the

Federal Rules of Civil Procedure, is appropriate when a defendant attacks a complaint

because it fails to state a legally cognizable claim.[1]  Such motions are disfavored and

---

[1]      *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

should be denied unless the moving party can show that the plaintiff cannot prove a plausible set of facts supporting his claim that would entitle him to relief.[2]

When considering a Rule 12(b)(6) motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto.[3]  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[4]  Conclusory allegations and unwarranted deductions of fact are not accepted as true.[5]  Thus, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[6]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[7]  The plaintiff's obligation is "to provide the 'grounds' of his 'entitle[ment] to relief' [and] requires more than labels

---

[2]     *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007).

[3]     *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[4]     *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[5]     *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[6]     *Bell Atlantic v. Twombly*, 550 U.S. at 555, quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[7]     *Bell Atlantic v. Twombly*, 550 U.S. at 570.

and conclusions."[8]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[9] and "the pleading must contain something more... than... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[10]  Detailed factual allegations are not required, but a formulaic recitation of the elements of a cause of action will not suffice.[11]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[12]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]  Furthermore, "determining whether a complaint states a plausible claim for relief... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]

---

[8]       *Bell Atlantic v. Twombly*, 550 U.S. at 555, citing *Papasan v. Allain*, 478 U.S. at 286.

[9]       *Bell Atlantic v. Twombly*, 550 U.S. at 555.

[10]      *Bell Atlantic v. Twombly*, 550 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

[11]      *Bell Atlantic v. Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted) (emphasis added).  See, also, *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009).

[12]      *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[13]      *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

[14]      *Ashcroft v. Iqbal*, 129 S.Ct. at 1950.

Therefore, once the plaintiff's factual allegations are identified, the court must draw on its judicial experience and common sense and determine whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]

**B.**     ***R*OBINS *D*RY *D*OCK *B*ARS *T*EXON'S *C*LAIM**

It is well settled in the Fifth Circuit that, in maritime tort cases such as this one, claimants may not recover for economic loss resulting from damage to property in which the claimant has no proprietary interest.[16]  "[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."[17]  Although the *Robins Dry Dock* decision has been called the "Tar Baby of tort law,"[18] and is subject to certain limited statutory exceptions, it is still the controlling law in this Circuit.[19]  In this case, Texon has not pleaded a proprietary interest in Rig 61 or in any property that might have been damaged when Rig 61 sank.

---

[15]     *Ashcroft v. Iqbal*, 129 S.Ct. at 1949, *Bell Atlantic v. Twombly*, 550 U.S. at 556.

[16]     *Robins Dry Dock v. Flint*, 275 U.S. at 308-09; *Louisiana v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (en banc).

[17]     *Reserve Mooring Inc. v. American Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001).

[18]     *Louisiana v. M/V TESTBANK*, 752 F.2d at 1035 (Wisdom, J., dissenting).

[19]     *Reserve Mooring v. American*, 251 F.3d at 1071-72.

Texon has asserted economic losses but there is no evidence that its alleged losses resulted from damage to property in which Texon has a proprietary interest. At oral argument, counsel for Texon conceded that Texon could not amend its complaint to allege damage to any property in which Texon has a proprietary interest. Consequently, the undersigned finds that Texon has not stated a claim that is cognizable by this Court under the general maritime law.

Texon argues that Rig 61's continued presence in the Charenton Canal constitutes a continuing tort and that it would be premature to dismiss Texon's claim before the tort is completed and the full nature and extent of its damages are known. Texon argues that its "further damages could include physical damage caused by the oil contained in the sunken rig." (Rec. Doc. 61 at 2). Texon also argues that it should be permitted to conduct discovery in an effort to determine whether it has sustained any damages that have, to date, been undetected. The undersigned finds that these arguments lacks merit since the mere possibility of future damage cannot support an existing cause of action. A Rule 12(b)(6) motion must be decided upon the content of the written complaint, and the court's decision cannot be based on what might someday be set forth in an amended complaint if certain purely speculative events were to occur at some point in the future. Absent an allegation that it has already sustained economic damages because of physical damage to property in which it has

-8-

a proprietary interest, Texon has not "raise[d] a right to relief above the speculative level."[20]  No such allegation was made in Texon's admiralty claim.  Accordingly, the undersigned finds that Texon has not stated a claim that is cognizable by this Court.

Because Texon has not stated a claim upon which relief can be granted, the undersigned recommends that the Towing Companies' motion to dismiss should be granted and that Texon's claim should be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b) of the Federal Rules of Civil Procedure, parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds

---

[20]     *Bell Atlantic v. Twombly*, 550 U.S. at 555.

of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th Cir. 1996).

Signed at Lafayette, Louisiana, this 23rd day of February, 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)